[Cite as *Kasper Invest. Properties, L.L.C. v. Put-in-Bay Twp. Bd. of Zoning Appeals*, 2015-Ohio-4628.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY


Kasper Investment Properties, LLC          Court of Appeals No. OT-14-037

     Appellant          Trial Court No. 12CV213

v.

Put-in-Bay Township Board of          **DECISION AND JUDGMENT**
Zoning Appeals, et al.

     Appellee          Decided:   November 6, 2015

* * * * *

John A. Coppeler, for appellant.

Philip J. Truax and Douglas J. Swearingen, Jr., for appellee, Put-in-Bay
Township Board of Zoning Appeals, et al.

Terrence L. Seeberger, for appellee, Harold M. Schwarz, III.

* * * * *

**JENSEN, J.**

# I.  Introduction

{¶ 1} This administrative appeal arises from a decision by appellee, the Put-in-Bay Township Board of Zoning Appeals ("BZA"), which denied a conditional use permit to appellant, Kasper Investment Properties, L.L.C., for the occasional rental of its home. Bryan Kasper and his father, Gerald Kasper, each own 50% of Kasper Investment Properties, L.L.C.

{¶ 2} Because we conclude that the Ottawa County Court of Common Pleas did not err in finding that the BZA's decision was supported with a preponderance of reliable, probative and substantial evidence, we affirm.

## II.  Facts and Procedural History

{¶ 3} This case concerns appellant's application for a conditional use permit for the occasional renting of a residence, located at 1191 Ashburn Avenue, Put-in-Bay, Ohio. The residence, known as "the shiphouse," is literally, the bow and wheelhouse portion of a freighter, that once sailed the Great Lakes.  In 1986, it was placed on a lakeside plot overlooking Lake Erie.  Appellant purchased the property in 1999.

{¶ 4} The shiphouse is located in an "R1" residential district, which prohibits commercial use of the property.  Property owners seeking to rent their homes in an R1 district must first obtain a conditional use permit.

{¶ 5} The sole means of ingress and egress to appellant's property is by way of an easement.  The easement is a strip of land that connects appellant's property to a private

2.

drive. The easement was granted in 1992 by Harold Swartz to Frank and Lydia Sullivan, who owned the shiphouse prior to appellant. The terms of the easement require the grantee, and its successors, to maintain it. Since purchasing the shiphouse, appellant paved the easement and erected a chain link fence, separating the easement from from the rest of Swartz' property.

{¶ 6} In 2009 or 2010, Bryan Kasper began renting the shiphouse without a permit. When advised that a permit was required, Kasper submitted an application, and a hearing on that issue was held before the BZA on July 15, 2010.

{¶ 7} *The BZA's Resolution and Findings of Fact*

{¶ 8} Nearly two years later, on March 21, 2012, the BZA issued findings of fact, denying the permit. An earlier, undated version was prepared by the BZA but never adopted. It was also the subject of an appeal by appellant. (Ottawa Co. Case No. 11-CV-163F.) The two appeals were consolidated by the lower court, and both findings of fact are part of the record.

{¶ 9} In the official finding of fact, dated March 21, 2012, the BZA found that appellant failed to satisfy nine of the ten prerequisite elements to justify granting a conditional use permit.

{¶ 10} The resolution pertaining to conditional use permits is set forth below in the left column. The BZA's findings of fact in this case is set forth on the right:

3.

| Section 13(IV)(E)(2) of the Put-In-Bay Township Zoning Resolution provides that "approval of a conditional use may be granted if the following [10] conditions are met * * * ." | The BZA's March 21, 2012 Findings of Fact as to Appellant's Application for a Conditional Use Permit: |
|---|---|
| 1. The location, size and character will be in harmony with the appropriate and orderly development of the surrounding neighborhood and applicable regulations of the Zoning District in which it is to be located. | "The proposed use of the property would not be in harmony with the appropriate and orderly development, *and use* of the surrounding neighborhood, and the applicable regulations of the zoning District as its previous use for this purpose, undertaken without appropriate permit, has caused a nuisance to the surrounding neighborhood." (Emphasis added.) |
| 2. The proposed development is in accord with the overall development plans of the area. | Access to [appellant's] property requires crossing an easement over neighboring properties which is objectionable by the neighboring property owners. Given the unique ingress and egress issues associated with the [appellant's] property, the proposed use would not be in accordance with the overall development plans of the area with specific reference to a continued history of this Board not granting conditional use permits that requires the use of an easement granted between particular property owners for such use. |
| 3. The proposed development will be in keeping with the existing land use character and physical development potential of the area. | The proposed use will not be in keeping with the existing land use, character and physical development potential of the area as no renting is currently allowed on said property, and thus such use is divergent from the existing land use and character. * * * |

4.

| | |
|---|---|
| 4. The necessity or desirability of the proposed use to the neighborhood or community has been proven. | Appellant "failed to prove the necessity or desirability of the proposed use to the neighborhood or community" in that the neighbors have "expressed a deep desire not to have this property rented." |
| 5. If permitted, the use will be of a nature that will make vehicular and pedestrian traffic no more hazardous than is normal for the District involved, taking into consideration vehicular turning movements in relation to routes of traffic flow, proximity and relationship to intersections, adequacy of sight distances, location and access of off-street parking provisions for pedestrian traffic, with particular attention to minimizing child-vehicle contacts in residential districts. | If the use was permitted, "as has already been seen, there would be increased traffic to an R-1 Residential District which is not the desire of [the BZA]." |
| 6. The use will be designed as to its location, size, intensity, site layout and periods of operation to eliminate any possible nuisances emanating therefrom which might be injurious to the occupants or damaging to their property of any other nearby permitted uses, whether by reason of dust, noise, fumes, vibration, smoke, or lights. | The use "has created and will continue to create, a nuisance in the forms of trespass, noise and other common problems associated with the rental of residential properties to adjoining land owners, especially when such renters would be required to cross the property of adjoining land owners in order to access [appellant's] property for such use." |
| 7. The use will be such that the proposed location and height of buildings or structures and the location, nature and height of walls, fences and landscaping will not interfere with or discourage the appropriate development and use of adjacent land and building or unreasonably affect their value. | "[L]and use by renters has had the effect of interfering with the use of adjacent land as stated [by the neighbors] who have already had issues with renters of the [appellant's] property." |

5.

| | |
|---|---|
| 8. The use will relate harmoniously with the physical and economic aspects of the adjacent land uses regarding prevailing shopping habits, convenience of access by prospective patrons, continuity of development, and need for particular services and facilities in specific areas of the Township. | The proposed use "will not relate harmoniously with the physical and economical aspects of the adjacent land uses * * * as this residential property would require access over an easement which has already resulted in disharmony in the affected area." |
| 9. The use is so designed, located and proposed to be operated that the public health, safety and welfare will be protected. | "[R]ental of [appellant's] property has already caused a nuisance, increased traffic flow, danger and other problems associated therewith to the adjoining land owners." |
| 10. The use will not cause substantial injury to the value of other property in the neighborhood in which it is to be located. | "The Board further finds that [appellant's] proposed use will have no substantial effect to the value of other property in the neighborhood in which it is located." |

{¶ 11} The BZA also noted that "it does not have a history of granting conditional use permits when easements are involved, and that such an effect greatly bears upon the decision of this Board." It added that when appellant rented the property, the police were called due to a noise complaint and that "there has been increased trash and resulting trespasses onto adjoining neighbors [sic] properties which further weighs against granting such conditional use permit in this instance."

{¶ 12} Appellant appealed to the court of common pleas on April 19, 2012, and a hearing was held before a magistrate. Appellant's neighbor, Harold M. Schwartz III, intervened in the case and testified at the hearing.

6.

## IV. The Magistrate's Decision and Adoption
thereof by the Common Pleas Court

{¶ 13} Following a two day hearing, the magistrate affirmed the BZA's denial of the permit. Appellant timely objected to the decision. By judgment entry dated September 10, 2014, the common pleas court found, "[u]pon careful and independent examination and analysis of the Magistrate's Decision, [the BZA's decision] * * * was supported by a preponderance of substantial, reliable and probative evidence." Accordingly, it adopted the magistrate's decision.

{¶ 14} Appellant appealed to this court on October 9, 2014, raising two assignments of error:

## V. Assignments of Error

A. The Common Pleas Court abused its discretion in overruling objections to the Magistrate's Decision affirming the decision of the Put-in-Bay Township Board of Zoning Appeals to deny appellant's application for a conditional use permit and in affirming the decision of the BZA.

B. The Common Pleas Court erred as a matter of law in affirming the decision of the Board of Zoning Appeals which improperly based its decision to deny appellant's application for a conditional use permit on matters beyond the scope of those specifically set forth in the zoning resolution.

7.

# VI. Standard of Review

## A. Administrative Appeals

{¶ 15} R.C. Chapter 2506 governs appeals to common pleas courts from final orders of administrative agencies, including municipal boards of zoning appeals. R.C. 2506.04 governs the standard of review to be applied by courts of common pleas. It provides that "the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."

{¶ 16} A judgment by a common pleas court may be appealed by any party to the court of appeals "on questions of law." R.C. 2506.04.

{¶ 17} In 2014, the Ohio Supreme Court revisited the standard of review applied in cases involving administrative appeals. *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals,* 141 Ohio St. 3d 318, 2014-Ohio-4809, 23 N.E.3d 1161. In that case, the court reasserted the principle that the standard of review applied by courts of common pleas is very different than courts of appeals and that the standard is "designed to strongly favor affirmance" by the latter. *Id.* at ¶ 30. It explained,

> Thus, R.C. Chapter 2506 confers on the common pleas courts the power to examine the whole record, make factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence. Although a hearing before a

common pleas court pursuant to R.C. 2506.01 is not a de novo review, "it often in fact resembles a de novo proceeding." *Cincinnati Bell v. Glendale,* 42 Ohio St.2d 368, 370, 328 N.E.2d 808 (1975).

By contrast, the standard of review for an appellate court reviewing a judgment of a common pleas court in this type of appeal is narrower and more deferential to the lower court's decision. * * * The courts of appeals may review the judgments of the common pleas courts only on questions of law; they do not have the same power to weigh the evidence. (Citations omitted.) *Cleveland Clinic Found.* at ¶ 24-25.

**B. Adoption of a Magistrate's Decision.**

{¶ 18} Because this case involved the lower court's adoption of a magistrate's decision, pursuant to Civ.R. 53, we must also discuss the appropriate standard of review under that rule.

{¶ 19} Civ.R. 53(D)(4)(d) provides that "[i]f one or more objections to a magistrate's decision are timely filed, the [common pleas] court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

{¶ 20} A party alleging error by the lower court under Civ.R. 53 has an affirmative duty to demonstrate that the trial court failed to conduct an independent review of the

magistrate's findings.  *In re Taylor G.*, 6th Dist Lucas No. 04CA15, 2006-Ohio-1992, ¶ 20-21, citing *Mahlerwein v. Mahlerwein,* 160 Ohio App.3d 564, 2005–Ohio–1835, 828 N.E.2d 153, ¶ 47 (4th Dist.).  An affirmative duty requires more than a mere inference, it requires appellant to provide the reviewing court with facts to rebut our general presumption.  *In re. Taylor G.* at ¶ 21.

## VII.  Analysis

{¶ 21} In its first assignment of error, appellant complains, "the Magistrate's Decision simply referred to the BZA findings of 'increased traffic, noise and trash.'"  Not so.  The magistrate specifically found that evidence of increased traffic, noise and trash was presented "both at the BZA hearing *and the court hearing*."  (Emphasis added.)

{¶ 22} Indeed, the magistrate presided over a two day hearing during which two of appellant's neighbors testified.  One neighbor complained of "seriously overflowing trash," loud and obscene language, and trespassing.  The neighbor testified that the incidents occurred during the time that appellant was renting the shiphouse (without a permit) and that he believed the renters were responsible for the incidents.

{¶ 23} From another neighbor, the magistrate heard testimony of a group of "at least a dozen, possibly more, 20-something, who were apparently renting."  In other words, evidence was presented to the magistrate of increased traffic, noise and trash as a result of appellant's rental of the premises.

10.

{¶ 24} Appellant counters that the evidence - that renters were responsible for the alleged incidents – was insufficient. Appellant further stresses that Bryan Kramer purchased two large containers to resolve the trash issue.

{¶ 25} Appellant is asking this court to weigh the evidence. Our role, however, is limited to reviewing the lower court decision on questions of law, not to weigh the evidence. That we might have arrived at a different conclusion than the BZA or the trial court "is immaterial." (Citations omitted.) *Henley v. Youngstown Bd. of Zoning Appeals,* 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). Absent legal error, this court must not disturb the judgment of the trial court.

{¶ 26} Second, appellant argues that the BZA's earlier, unofficial findings of fact "erroneously emphasized" that granting the permit on a private easement would create an added financial burden to the adjacent property owners. Appellant states that it was contractually required to maintain the easement and therefore the neighbors would not bear any increased expenses.

{¶ 27} We find this argument irrelevant. Appellant concedes that the proposed findings were never adopted. Further, that particular proposed finding, regarding "added financial burden," was ultimately removed from the official findings of fact. A fair reading of its removal is that the BZA agreed with appellant, i.e. that granting a conditional use permit would not, in fact, create a financial burden for the neighbors.

{¶ 28} Finally, appellant claims that the lower court ignored the fact that the property to the east of appellant's, the "Arth property," was used "for weekly rentals for

11.

the whole summer for more than five years." Bryan Kramer testified that he assumes the owners were granted a conditional use permit to do so, but no other evidence was presented to support or negate that issue.

{¶ 29} The record does establish, however, that the two properties are different in key respects. For example, whereas the Arth property is a 1500 square foot home, the shiphouse is 7000 square feet, allowing itself to be rented by many more people at one time. Moreover, the Arth property is accessible from a public paved road, whereas the shiphouse is accessible only from a private road, and then only via an easement. Finally, unlike in the instant case, there was no evidence put forth that rental of the Arth property generated complaints of traffic, noise or trash.

{¶ 30} Because the properties are dissimilar, appellee was not "bound by precedent to grant the conditional use in this case." *Cmty. Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St.3d 452, 456-57, 613 N.E.2d 580 (1993) (BZA's grant of conditional use permit to one property owner and denial to another not unreasonable absent evidence that "the subject property and the area surrounding it are similar in any material way to the circumstances under which conditional uses have been previously granted."). Therefore, under these facts, it was not unreasonable, as a matter of law, for the BZA to deny appellant a conditional use permit, even assuming that it granted one to the owners of the Arth property.

12.

{¶ 31} In sum, we cannot say that the lower court erred in concluding that the BZA's findings were supported by a preponderance of reliable, probative, and substantial evidence. Appellant's first assignment of error is not well-taken.

{¶ 32} In its second assignment of error, appellant argues that the BZA "went well beyond consideration of the enumerated factors which the township's zoning resolution requires it to analyze."

{¶ 33} First, appellant complains that the BZA impermissibly added the words "and use" after "orderly development" to the first criteria set forth in the resolution. Appellant fails, however, to present any argument in support of its legal conclusion, as required by App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.) Accordingly, we decline to address this argument.

{¶ 34} Next, appellant argues that it was error for the BZA to ignore the rental of the Arth property which we addressed in appellant's first assignment of error.

{¶ 35} Finally, appellant argues that the BZA placed improper emphasis on the easement. Appellant argues that the "there is nothing in the zoning resolution which establishes as a standard that a conditional use permit must be denied when an easement for access to the applicant's property is involved."

13.

{¶ 36} The weight accorded to the easement by the BZA is irrelevant. As discussed, the lower court's hearing on this matter is akin to a de novo proceeding. In other words, the court was not obliged to accept the impact, if any, of the easement viz a vis the application. Indeed, the magistrate accorded the easement no weight. Instead, the decision was based entirely on evidence of "increased traffic, noise and trash," which we have already sustained.

{¶ 37} For the record, however, we note that appellant points to no authority for the proposition that it would be improper to consider the easement. Although the presence (or absence) of an easement may not be a specific factor, we think the language of the eighth criterion, for example, is broad enough to include consideration of the easement. Again, that factor requires that the proposed use "will relate harmoniously with the physical * * * aspects of the adjacent land uses regarding * * * continuity of development * * *." We see no error in the BZA's conclusion that the proposed use "will not relate harmoniously with the physical and economical aspects of the adjacent land uses * * * as this residential property would require access over an easement which has already resulted in disharmony in the affected area."

{¶ 38} Finally, we note that this court has previously sustained the BZA's denial of a permit with regard to the shiphouse under similar, but not identical circumstances. *Sullivan v. Put-in-Bay Township Zoning Board of Appeals,* 6th Dist. Ottawa No. OT-94-048, 1995 WL 413155 (Jul. 14, 1995). At issue in *Sullivan* was the previous owners'

14.

application for a conditional use permit to operate the property as a bed and breakfast. That case required interpretation of the same ten criteria, plus an additional regulation specific to operating a bed and breakfast. In sustaining the denial of the permit, we considered the fact that access to the property necessitated traversing upon an easement.

> The whole record reveals that all of the adjoining property * * * is residential, that the only access to appellee's property is by means of an easement over private property, that numerous persons opposed the issuance of the conditional use permit and that when appellee operated a bed and breakfast without obtaining a permit the noise, dust and traffic increased. Therefore, the Board's decision was supported by substantial, reliable and probative evidence. Accordingly, the common pleas court was required to affirm that decision and erred, as a matter of law, in substituting its judgment for that of the Board. (Footnote omitted.) *Id.* at *4.

{¶ 39} For all of the above reasons, appellant's second assignment of error is not well-taken.

{¶ 40} Finally, we find that appellant has put forth no evidence, and does not argue, that the trial court erred under Civ.R. 53 in adopting the magistrate's decision. "As an appellate court, we generally presume the regularity in the proceedings below, and thus, we presume that the trial court properly conducted an independent review of the magistrate's findings." *In re Taylor G.*, 6th Dist Lucas No. 04CA15, 2006-Ohio-1992, ¶

15.

20-21.  Absent evidence to affirmatively demonstrate that the trial court failed to conduct an independent review of the magistrate's findings, we also sustain the judgment under Civ.R. 53.

### VIII.  Conclusion

{¶ 41} For the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                                   _____

JUDGE

Stephen A. Yarbrough, P.J.    

_____

James D. Jensen, J.                 JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.

16.